UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

JOHANA GOMEZ,                                        Docket No.:
                              Plaintiff,             1:23-cv-00846-RPK-LB

            -against-

TARGET CORPORATION,

                              Defendant.

------------------------------------------X

### DEFENDANT TARGET CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**SIMMONS JANNACE DELUCA, LLP**
**Attorneys for Defendant**
***TARGET CORPORATION***
**Office & P.O. Address:**
**43 Corporate Drive**
**Hauppauge, New York 1788-2048**
**(631) 873-4888**

Submitted by:
Michael C. Lamendola

Date of Service:
January 25, 2024

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................ ii,iii

PRELIMINARY STATEMENT ..................................... 1

STATEMENT OF FACTS ....................................... 1

ARGUMENT ................................................. 2

POINT I

    IT IS UNDISPUTED THAT TARGET DID NOT CREATE OR
    POSSESS CONSTRUCTIVE NOTICE OF THE CONDITION ........ 2

POINT II

    PLAINTIFF CANNOT MEET HER PRIMA FACIE BURDEN OF
    ESTABLISHING THAT TARGET HAD ACTUAL NOTICE OF THE
    CONDITION AND A REASONABLE OPPORTUNITY TO CLEAN IT ... 4

    A. Plaintiff is Unable to Establish Target Possessed
       Actual Notice of the Condition ................... 5

    B. Plaintiff is Unable to Establish Target Had
       a Reasonable Opportunity to Clean the Condition ..10

POINT III

    ANY POTENTIAL DISCOVERY ARGUMENTS RAISED BY
    PLAINTIFF IN OPPOSITION ARE BASELESS AND DEVOID
    OF MERIT ........................................... 15

CONCLUSION ............................................. 17

i

## TABLE OF AUTHORITIES

<u>Page</u>

<u>Cases</u>

<u>Alami v. 215 E. 68th St., L.P.</u>, 88 A.D.3d 924 (2d Dep't
     2011) .................................................. 11, 12

<u>Aquino v. Kuczinski, Vila & Assoc., P.C.</u>, 39 A.D.3d 216
     (1st Dep't 2007) ......................................... 4

<u>Byrd v. Walmart, Inc.</u>, 128 A.D.3d 629 (2d Dep't 2015) ......... 13

<u>Casiano v. Target Stores</u>, 2009 WL 3246836 (E.D.N.Y. Sept.
     24, 2009) ................................................ 3

<u>Dardha v. Costco Wholesale Corp.</u>, 2019 WL 357930
     (S.D.N.Y. Jan. 29, 2019) ....................... 13, 14, 15

<u>Gallagher v. Target Corp.</u>, 2010 WL 4741096 (W.D.N.Y. July
     9, 2020) ............................................... 2, 3

<u>Gervis v. Target Corp.</u>, 2017 WL 3669009 (E.D.N.Y. July
     20, 2017) ............................................... 13

<u>Gonzalez v. K-Mart Corp.</u>, 585 F.Supp.2d 501 (S.D.N.Y.
     2008) ............................................... 11, 12

<u>Kaur v. New York City Health and Hosps. Corp.</u>, 2010 WL
     11589961 (S.D.N.Y. May 10, 2010) ........................ 9

<u>Khalil-Mirhom v. Kmart Corp.</u>, 2014 WL 173415 (E.D.N.Y.
     Jan. 13, 2014) .......................................... 9

<u>Martinez v. Inserra Supermarkets, Inc.</u>, 187 A.D.3d 1172
     (2d Dep't 2020) ........................................ 13

<u>Mohammed v. Delta Air Lines, Inc.</u>, 2011 U.S. Dist. LEXIS
     132869 (E.D.N.Y. Jun. 8, 2011) ......................... 17

<u>Quarles v. Columbia Sussex Corp.</u>, 997 F.Supp 327
     (E.D.N.Y. 1998) ......................................... 4

<u>Rallo v. Man-Dell Food Stores, Inc.</u>, 117 A.D.3d 705 (2d
     Dep't 2014) ............................................ 13

Randall v. Montefiore Med. Ctr., 7 A.D.3d 464 (1st Dep't
        2004) ................................................ 13

Thaqi v. Wal-Mart Stores E., LP, 2014 WL 1330925
        (E.D.N.Y. Mar. 31, 2014) ............................. 4

Vasquez v. United States, 2016 WL 315879 (S.D.N.Y. Jan.
        15, 2016) ............................................ 2

Wesolek v. Tops Markets, Inc., 255 A.D.2d 972 (4th Dep't
        1998) ............................................ 11, 12

**DEFENDANT TARGET CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

TARGET CORPORATION (hereinafter "Target") by its attorneys, SIMMONS JANNACE DELUCA, LLP, respectfully submits this Memorandum of Law in support of its motion which seeks an Order granting summary judgment pursuant to F.R.C.P. 56: (1) dismissing plaintiff's Verified Complaint for failure to establish a *prima facie* case of negligence against Target; and (2) for such other and further relief as this Court may deem just and proper.

**PRELIMINARY STATEMENT**

Plaintiff cannot adduce any admissible evidence to establish a *prima facie* case that Target created the alleged dangerous condition or possessed the requisite notice of its existence. The store surveillance, documentary evidence and testimony conclusively establish that the condition upon which plaintiff slipped was created by another guest approximately two and half minutes prior to her accident without notice to Target and leaving insufficient time to discover and/or remedy it.

**STATEMENT OF FACTS**

This is an action sounding in negligence for personal injuries allegedly sustained by plaintiff as a result of a slip and fall accident on January 10, 2021, inside the Elmhurst Target.

1

A complete recitation of the facts is contained in the Declaration in Support of Michael C. Lamendola, and in Target's Statement of Facts Pursuant to Rule 56.1, both of which are incorporated by reference herein.

<u>**ARGUMENT**</u>

**POINT I**

**IT IS UNDISPUTED THAT TARGET DID NOT CREATE OR POSSESS <u>CONSTRUCTIVE NOTICE OF THE CONDITION</u>**

There is no question that the condition which caused plaintiff to slip was created by another guest when he dropped a pickle jar in Aisle A23 before her accident. (**Ex. "L"**, p.48, l.6 – p.49, l.4, **Ex. "M-2"**, 4:50:19 p.m., 4:52:57 p.m. **Ex. "Q"**, p.42, l.2-24, p.48, l.25 – p.49, l.4, **Ex. "R"**, p.67, l.12 – p.70, l.25, p.105, l.5-9, **Ex. "S"**, ¶¶ 4, 7-16, **Ex. "T"**, ¶ 6, **Ex. "V"**, ¶¶ 6, 14, 20, **Ex. "V-1"**, Pltf's Resp. Rule 56.1, ¶¶ 3-5). Accordingly, plaintiff cannot succeed on a claim of creation against Target. <u>See</u> <u>Vasquez v. United States</u>, 2016 WL 315879, *7 (S.D.N.Y. Jan. 15, 2016)("To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant."); <u>Gallagher v. Target Corp.</u>, 2010 WL 4741096 (W.D.N.Y. July 9, 2020)(holding Target did not create a hazardous condition based on surveillance showing a customer dropping and breaking the Gatorade bottle shortly before the accident).

2

Additionally, the approximate two and half minutes between creation of the spill and plaintiff's accident, during which time no employees entered or passed Aisle A23, was clearly insufficient to permit Target to both discover the condition and exercise reasonable care to remedy it. (**Ex. "L"**, p.48, l.6 – p.49, l.4, p.56, l.6-15, **Ex. "M-2"**, 4:50:19 p.m., 4:52:57 p.m. **Ex. "Q"**, p.42, l.2-24, p.48, l.25 – p.49, l.4, **Ex. "R"**, p.34, l.24 – p.35, l.2, p.68, l.10 – p.70, l.25, p.105, l.5-9 **Ex. "S"**, ¶¶ 5, 17, **Ex. "T"**, ¶ 8, **Ex. "V"**, ¶¶ 8, 17); See <u>Gallagher</u>, *supra* (holding 12-minute period of time to permit discovery and remedy of a spill insufficient to charge defendant with constructive notice). As such, plaintiff also cannot succeed on a claim of constructive notice. See <u>Casiano v. Target Stores</u>, 2009 WL 3246836 (E.D.N.Y. Sept. 24, 2009).

Plaintiff concedes the futility of arguing creation or constructive notice by declining to raise any such contentions in response to Target's pre-motion conference request. Indeed, as evidenced by plaintiff's submission, she is proceeding solely on a theory that Target possessed actual notice of the spill and a sufficient opportunity to clean or warn of the condition notwithstanding its admitted existence for less than three minutes. <u>See</u> ECF Doc. No. 27. However, as demonstrated *infra*, this anticipated argument is premised upon misinterpreted facts, misapplied case law and a dubious post-accident statement

3

attributed to responding manager Laura Brownlie that, if accepted, is vague and ambiguous at best.

## POINT II

### PLAINTIFF CANNOT MEET HER PRIMA FACIE BURDEN OF ESTABLISHING THAT TARGET HAD ACTUAL NOTICE OF THE CONDITION AND A REASONABLE OPPORTUNITY TO CLEAN IT

Actual notice "requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition." Quarles v. Columbia Sussex Corp., 997 F.Supp 327, 332 (E.D.N.Y. 1998). Significantly, "[e]ven if a plaintiff demonstrates that the defendant had actual notice of the condition, the defendant is entitled to a reasonable opportunity to correct the hazardous condition." Thaqi v. Wal-Mart Stores E., LP, 2014 WL 1330925, *4 (E.D.N.Y. Mar. 31, 2014); see also Aquino v. Kuczinski, Vila & Assoc., P.C., 39 A.D.3d 216, 219 (1st Dep't 2007)(noting "notice alone is not enough; the plaintiff must also show that defendant had 'a sufficient opportunity, within the exercise of reasonable care, to remedy the situation' after receiving such notice").

Here, it is respectfully submitted that plaintiff is unable to marshal any non-speculative evidence to demonstrate Target was previously aware of broken pickle jar and had a reasonable opportunity to address the condition in the mere two and half minutes the spill existed before she slipped and fell. As such, dismissal of her Verified Complaint is warranted.

4

**A.    Plaintiff is Unable to Establish Target Possessed Actual Notice of the Condition**

The record is devoid of any facts demonstrating that Target possessed actual prior notice of the condition. The surveillance video does not depict any guests, including the individual who dropped the pickle jar, reporting the spill to Target before plaintiff's accident. (**Ex. "M-2"**). Indeed, the video shows no Target employees entering or passing Aisle A23 during the short period between creation of the spill and the accident. (**Ex. "L"**, p.56, l.6-15, **Ex. "M-2"**, 4:50:19 p.m. – 4:52:57 p.m., **Ex. "R"**, p.34, l.24 – p.35, l.2, **Ex. "S"**, ¶¶ 5, 17, **Ex. "T"**, ¶ 8, **Ex. "V"**, ¶¶ 8, 17). No complaints were received about the spill prior to plaintiff's accident. (**Ex. "R"**, p.61, l.16 – p.62, l.55, **Ex. "S"**, ¶18, **Ex. "T"**, ¶¶ 9, 16, **Ex. "U"**, ¶¶ 6, 8, 10, **Ex. "V"**, ¶ 17, 21, **Ex. "W"**, ¶ 4). Moreover, responding Target employees were not aware, or made aware, of the spill before arriving at the accident scene. (**Ex. "T"**, ¶¶ 9, 12, **Ex. "U"**, ¶¶ 6, 10, **Ex. "V"**, ¶¶ 9, 11, **Ex. "W"**, ¶ 4).

Likewise, plaintiff and her son are not aware of any prior complaints received by the store about the spill. (**Ex. "R"**, p.61, l.16 – p.62, l.55). While shopping in the area before her accident, plaintiff saw no telltale signs that would demonstrate the store was aware of the broken pickle jar such as employees with cleaning supplies or caution or wet floor signs at or near

5

Aisle A23. (**Ex. "R"**, p.30, l.7-10, p.54, l.15 – p.55, l.2). Additionally, she did not hear any conversations about the broken pickle jar, announcements concerning the spill or the sound of breaking glass before her slip and fall. (**Ex. "R"**, p.29, l.7 – p.30, l.6, p.48, l.22-25, p.71, l.14-16).

Rather than accept these facts as fatal to her claim, plaintiff intends to argue that Target had actual notice based solely on a purported post-accident statement made by Ms. Brownlie that she was aware of the broken pickle jar and directed an employee to clean it prior to the accident. However, upon closer examination, this alleged statement clearly fails in its designed purpose of escaping summary judgment.

Significantly, Ms. Brownlie unequivocally denies making this statement to plaintiff. (**Ex. "U"**, ¶¶ 11-12). Moreover, it does not appear in the Guest Incident Report reviewed and signed by plaintiff after the accident. (**Ex. "M-1"**). The statement is also unsupported by the store surveillance, which shows no evidence that the spill was reported to Target or any employees with cleaning supplies in or near Aisle A23 until several minutes after the accident had occurred. (**Ex. "M-2"**).

Further calling into question plaintiff's self-serving and uncorroborated claim is the timing of the purported statement's disclosure and its conspicuous absence from all preceding court documents and proceedings. Indeed, despite its clear relevance

to plaintiff's allegations against Target, the statement is not referenced in her Verified Complaint. (**Ex. "A"**). In addition, Ms. Brownlie was not identified in plaintiff's Initial Rule 26 disclosure as a witness with discoverable information that may be used to support her claims. (**Ex. "E"**, ¶ 1, **Ex. "R"**, p.98, l.22 – p.99, l.24). Counsel never mentioned the purported post-accident statement during any of the multiple conferences held before Magistrate Bloom. (**Ex. "F"**, **Ex. "H"**, **Ex. "I"**, **Ex. "K"**, **Ex. "O"**). Nor was it raised in the joint status letter filed with the court specifically addressing liability, plaintiff's potential arguments for notice and Target's repeated requests for a voluntary discontinuance based on the undisputed facts of the accident. (**Ex. "N"**). Rather, plaintiff waited until discovery on liability was largely complete, and Target granted permission to pursue summary judgment by Magistrate Bloom, to mention the statement for the first time in an interrogatory response. (**Ex. "P"**, ¶ 8).

Assuming, *arguendo,* the court is willing to overlook the statement's clear disconnect from the undisputed factual record and the curious timing of its disclosure, it still does not warrant denial of the instant application.

The interrogatory response in which the statement was first identified states as follows:

Further, Plaintiff alleges that Defendant TARGET had actual notice as LAURA BROWNLIE personally advised Plaintiff after the subject incident happened that Ms. Brownlie was aware of the subject broken jar of pickles on the floor and that prior to the accident LAURA BROWNLIE directed another TARGET employee to clean the subject hazardous condition.

(**Ex. "P"**, ¶ 8).

However, at her deposition, plaintiff provided a starkly less detailed and ambiguous version of the statement:

Q. And did Laura tell you anything about the accident?

A. Yes.

Q. What did she tell you?

A. She told me that they already -- that they were aware that the jar was on the floor.

Q. Did she say anything else, other than to tell you that they were already aware the jar was on the floor?

A. That they already called somebody to come and clean up.

Q. Did she say anything else?

A. No.

(**Ex. "R"**, p.90, l.13 - p.91, l.2).

Upon further questioning, it became clear that this testimony constituted the actual, and full, extent of the statement claimed by plaintiff:

Q. She didn't tell you who they called, right?

A. No.

8

Q.   She didn't tell you who "they" was, who called, right?

A.   No.

Q.   She didn't tell you for how long they knew, correct?

A.   Correct.

Q.   And she didn't tell you how they knew, correct?

A.   Correct.

(**Ex. "R"**, p.91, l.3 – l.14).

As evidenced by the aforementioned, plaintiff admittedly never bothered to learn from Ms. Brownlie who "they" were, how "they" learned of the spill, how long "they" knew about the spill or who "they" called. Without these vital contextual details, plaintiff's vague and ambiguous testimony fails to establish that Target had actual notice of the condition for any appreciable period. Therefore, it is insufficient to raise a triable issue of fact. See Kaur v. New York City Health and Hosps. Corp., 2010 WL 11589961 (S.D.N.Y. May 10, 2010)(finding plaintiff's vague and conclusory testimony insufficient to defeat a motion for summary judgment); see also Khalil-Mirhom v. Kmart Corp., 2014 WL 173415 (E.D.N.Y. Jan. 13, 2014).

Moreover, plaintiff testified unequivocally that she did not speak with Ms. Brownlie until after she left Aisle A23 following her accident to prepare the Guest Incident Report. (**Ex. "R"**, p.87, l.9 – p.88, l.10). Thus, even if the Court were

to take the leap of logic needed on plaintiff's behalf to associate the unknown "they" with Target, the statement still does not raise a triable issue of fact as to whether Target possessed actual prior notice of the spill. Indeed, based on the timing and location of where the statement was purportedly made as testified to by plaintiff, it is just as likely that a reasonable jury could infer that Ms. Brownlie was merely informing plaintiff that the store learned of the spill as a result of her accident and in process of having it cleaned while she prepared the Guest Incident Report.

Left with nothing else, plaintiff is unable to demonstrate that Target possessed the requisite actual notice.

**B.   Plaintiff is Unable to Establish that Target Had a Reasonable Opportunity to Clean the Condition**

Even if plaintiff was able to point to any probative evidence of actual notice, she cannot meet the second prong of her burden. More specifically, demonstrating Target had a reasonable opportunity to clean the condition.

Assuming Target did possess actual notice, a fact which it categorically denies, it is undisputed that the absolute earliest Target could have learned of the spill was two and half minutes prior to the accident when it was created. (**Ex. "M-2"**, 4:50:19 p.m.). Case law makes clear that this duration, and similarly short timeframes, do not provide a defendant with a

10

reasonable opportunity to remedy a condition.

In Gonzalez v. K-Mart Corp., 585 F.Supp.2d 501 (S.D.N.Y. 2008), plaintiff slipped on a clear puddle of hair gel on the floor of an aisle in defendant's store. It was undisputed that a store employee observed the puddle two to three minutes before plaintiff fell and in the process of retrieving cleaning materials when the accident occurred. The court determined this brief time did not provide the defendant with a reasonable opportunity to remedy the defect. Id.

Similarly, in Alami v. 215 E. 68th St., L.P., 88 A.D.3d 924 (2d Dep't 2011), the Second Department granted summary judgment where, five minutes before plaintiff's accident, an elevator operator was informed of a spill in the laundry room located in basement of defendant's apartment building. Based on "the circumstances of the case, the court concluded that defendant did not have actual notice of the alleged dangerous condition for a sufficient length of time to remedy it. Id.

The holding in Wesolek v. Tops Markets, Inc., 255 A.D.2d 972 (4th Dep't 1998) is also instructive. There, the Fourth Department affirmed a jury verdict for the defendant because even if the "defendant may have had actual notice of a puddle of liquid created by a broken bottle in defendant's store, there was credible evidence that the puddle existed for no longer than 5 to 10 minutes before [the] defendant's employee began mopping

11

it up." Id.

Even if the clear improbability that Target somehow learned of the spill immediately upon its occurrence is ignored, it cannot be argued that the subsequent two and half minutes afforded sufficient time to respond to Aisle A23 and clean the condition. This conclusion only becomes more apparent when considering surveillance demonstrates no employees at or near Aisle A23 for the duration of the spill's existence leading up to the accident and the overall sheer size of the store at 150,000 square feet[1] with two levels of salesfloors. (**Ex. "L"**, p.56, l.6-15, **Ex. "M-2"**, 4:50:19 p.m. - 4:52:57 p.m., **Ex. "R"**, p.27, l.16-22, p.34, l.24 - p.35, l.2, **Ex. "S"**, ¶¶ 5, 17, **Ex. "T"**, ¶ 8, **Ex. "V"**, ¶¶ 8, 17). Indeed, plaintiff's impossible expectation that an employee should be able to respond to a spill in near instantaneous fashion at a store like the Elmhurst Target was also recognized by Magistrate Bloom when she rhetorically asked counsel during discussions about his theory of liability, "Have you ever tried to find somebody in a big box store to help you?" (**Ex. "K"**, p.8, l.5-15).

In light of the aforementioned, it is clear that plaintiff cannot carry her burden on this necessary element as a matter of law. See Gonzalez, *supra,* Alami, *supra*, Wesolek; *supra; see also* Gervis v. Target Corp., 2017 WL 3669009 (E.D.N.Y. July 20,

---

[1] See https://ewhowell.com/portfolio/target/

2017); Martinez v. Inserra Supermarkets, Inc., 187 A.D.3d 1172 (2d Dep't 2020); Byrd v. Walmart, Inc., 128 A.D.3d 629 (2d Dep't 2015); Rallo v. Man-Dell Food Stores, Inc., 117 A.D.3d 705 (2d Dep't 2014); Randall v. Montefiore Med. Ctr., 7 A.D.3d 464 (1st Dep't 2004).

Based on the response to Target's pre-motion conference request, it is anticipated plaintiff will exclusively rely on Dardha v. Costco Wholesale Corp., 2019 WL 357930 (S.D.N.Y. Jan. 29, 2019) reconsideration denied 2019 WL 1416987 (S.D.N.Y. Mar. 28, 2019), in opposition. See ECF Doc. No. 27. Seemingly unbeknownst to plaintiff, this office litigated that matter on behalf of the defendant and, as a result, acutely familiar with the factual and legal arguments made therein.

Dardha is distinguishable on multiple grounds. In that case, plaintiff Dardha slipped and fell on a liquid spill while walking behind a register inside the Port Chester Costco. Significantly, a cashier was actively working at the register at the time of the accident and, thus, only a few feet away from the alleged spill. In addition, Dardha and her son testified consistent with surveillance video that the cashier made post-accident statements clearly suggesting he had actual notice of the spill prior to her fall (i.e. "why hasn't somebody cleaned this up?"). Dardha, 2019 WL 357930 at *1.

Based in part on the cashier's purported statements

uncontradicted by surveillance video capturing the accident, the court found a genuine dispute of material fact as to whether Costco had actual notice of the spill prior to plaintiff's fall. Dardha, 2019 WL 357930 at *6.

In the subsequent decision denying reconsideration, the Court elaborated on its rationale. Therein, it clarified that there was a factual dispute as to how long the spill may have been present before plaintiff slipped and fell.[2] Dardha, 2019 WL 1416987 at *2 ("Defendant argues that it is undisputed that the liquid was on the floor for fewer than eighty-three seconds...However, Plaintiff disputes that the spill was on the floor for eighty-three seconds."). Based on the dispute over the spill's duration, and the purported post-accident statement made to Dardha and her son, the Court determined that summary judgment was properly denied on the basis that, *inter alia*, a reasonable jury could infer that the cashier was aware of the spill and failed to clean or remedy the situation in the time between allegedly noticing the spill and the accident. Dardha, 2019 WL 1416987 at *2.

Here, unlike Dardha, there is no evidence that a Target employee with actual notice of the spill had an opportunity to take reasonable corrective measures prior to plaintiff's

---

[2] This is contrary to plaintiff's response to Target's pre-motion conference request which affirmatively represents that the spill in Dardha existed for "eighty-two seconds."

accident, let alone affirmatively failed to do so. Indeed, surveillance clearly establishes that there were no employees even in the vicinity of the spill until after plaintiff fell. (**Ex. "L"**, p.56, l.6-15, **Ex. "M-2"**, 4:50:19 p.m. – 4:52:57 p.m., **Ex. "R"**, p.34, l.24 – p.35, l.2, **Ex. "S"**, ¶¶ 5, 17, **Ex. "T"**, ¶ 8, **Ex. "V"**, ¶¶ 8, 17). Also distinguishable from Dardha is the absence of any dispute as to the short duration of the spill which could be cited to potentially raise a triable issue of fact as to whether there was sufficient time to remedy it. (**Ex. "M-2"**, 4:50:19 p.m. – 4:52:57 p.m.). While both matters involve post-accident statements purportedly made by employees, the statement in Dardha was definitive, uncontradicted by store video, made near contemporaneously with the accident and uttered by an employee present at the scene who presumably had knowledge of the condition of the floor by his register. All factors which are decidedly absent from the purported statement of Ms. Brownlie. (**Ex. "R"**, p.90, l.13 – p.91, l.14).

Accordingly, the apparent sole authority plaintiff intends on relying upon in opposition fails to create a basis to deny Target's entitlement to dismissal of this matter.

## POINT III

### ANY POTENTIAL DISCOVERY ARGUMENTS RAISED BY PLAINTIFF IN OPPOSITION ARE BASELESS AND DEVOID OF MERIT

Although not argued in any detail, plaintiff's response to

the pre-motion conference request appears to suggest she may also challenge Target's clear right to summary judgment based on an alleged failure by defendant "to preserve more than one camera angle of surveillance footage from the date of the subject incident" and the resulting "prejudice." See ECF Doc. No. 27. Any such argument, if pursued by plaintiff, is wholly baseless and should be dispatched by the Court as such.

Significantly, plaintiff deposed the employee who personally searched for the surveillance footage from the accident date, Target Security Specialist Jose Ortiz. (**Ex. "L"**, p.39, l.5-9, **Ex. "Q"**, p.47, l.14-23). Mr. Ortiz testified that he preserved the footage depicting creation of the spill and plaintiff's accident. (**Ex. "Q"**, p.47, l.14-23). He confirmed there were no other cameras located near the accident location capable of capturing Aisle A23 or the surrounding area. (**Ex. "Q"**, p.46, l.21 – p.47, l.23, p.53, l.8-14). If any such additional camera angles had existed on the accident date, he would have preserved the footage in accordance with Target's policies and procedures. (**Ex. "Q"**, p.39, l.19 – p.40, l.14).

As plaintiff will be unable to demonstrate that any additional surveillance footage existed as no such footage did exist, there is no basis to find that plaintiff was prejudiced in any fashion or otherwise excuse her anticipated inability to effectively oppose Target's motion. See Mohammed v. Delta Air

Lines, Inc., 2011 U.S. Dist. LEXIS 132869, *22 (E.D.N.Y. Jun. 8, 2011)("...because plaintiff fails to demonstrate that such video footage exists, spoliation doctrine is inapplicable"). Accordingly, it is respectfully requested that Target's motion be granted in its entirety.

<strong><u>CONCLUSION</u></strong>

For the above stated reasons, it is respectfully requested that this court grant Target's motion for summary judgment, dismissing plaintiff's Verified Complaint in its entirety, together with such other and further relief this court deems just and proper.

Dated:   Hauppauge, New York
         January 25, 2024

Respectfully submitted,

**SIMMONS JANNACE DELUCA, LLP**

BY:  /s/ Michael C. Lamendola
     MICHAEL C. LAMENDOLA
Attorneys for Defendant
TARGET CORPORATION
**Office & P.O. Address:**
43 Corporate Drive
Hauppauge, New York 11788
(631) 873-4888